UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

RICKY HALL,                       )

                              )

      Plaintiff,             )

                              )

      vs.                    )      CV-02-CO-0826-W

                              )

EMPIRE COKE CO.,          )

                              )

      Defendant.         )

**ENTERED**

DEC 0 3 2003

MEMORANDUM OF OPINION

## I.    INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964.  The court has for consideration Defendant's motion for summary judgment, filed April 28, 2003, [Doc. # 14], and Defendant's motion to strike filed on September 9, 2003, [Doc. # 32].  Upon due consideration, the motion to strike will be DENIED and the motion for summary judgment will be GRANTED.

## II.    FACTS

Defendant Empire Coke Company ("Empire") is a company with a facility in Tuscaloosa, Alabama.  Plaintiff Ricky Hall is an African-American male who at all times relevant to this lawsuit was employed

by Empire as a common laborer in Department 3. Empire's workers are unionized and covered by a Collective Bargaining Agreement, which permits workers to bid on jobs throughout the facility. The employees may bid on a job based on the department they are in and then based on seniority. [Contract p. 26].

Hall was initially hired on June 26, 1999. The record does not clearly indicate when or why Hall was terminated.

Hall claims Empire has: 1) subjected him to a hostile work environment; 2) discriminated against him based on race in the awarding of jobs; and 3) retaliated against him for filing a union grievance and an Equal Employment Opportunity Charge ("EEOC").[1]

III.   STANDARD

Summary judgment is proper "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary

---

[1] The facts surrounding Hall's retaliation claim are fully laid out in that part of the opinion.

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. In evaluating the argument of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. Of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to the interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. &*

*Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002)(quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   DISCUSSION

A.   Motion To Strike

The defendant has moved to strike the affidavit of Ricky Hall. The asserted grounds to strike the motion are that it does not comply with Federal Rules of Civil Procedure and it directly contradicts unambiguous prior testimony. The court has received no response from the plaintiff. The court fully understands the defendant's position; however, including the affidavit does not affect the outcome of this opinion. Therefore, the motion to strike is denied.

B.   Motion for Summary Judgment

1.   42 U.S.C. § 1981 Hostile Work Environment Claim

Plaintiff brought his hostile work environment claim under 42 U.S.C. § 1981, but the requirements of proof and the analytical framework are the same as a Tile VII hostile work environment claim. *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002). To establish a hostile work environment claim under Title VII, the

plaintiff must show "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank v. Vinson,* 477 U.S. 57 (1986)). To establish his claim for a racially hostile work environment, the plaintiff must show: 1) he belongs to a protected group; 2) he was subjected to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee, such as race; 4) the harassment was sufficiently severe and pervasive to alter the terms and conditions of employment and create an abusive working environment; and 5) the employer is responsible for such environment under a theory of direct or vicarious liability. *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002).

Empire claims Hall cannot show that he was subjected to harassment sufficiently severe and pervasive as to alter the terms and conditions of his employment. Harassing conduct is sufficiently severe or pervasive if it results in 1) an environment that a reasonable person would find hostile or abusive; and 2) an environment that the victim

subjectively perceives to be abusive. *Harris*, 510 U.S. at 21-22. In evaluating the objective severity of harassing conduct, the court must consider the totality of the circumstances, including: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller*, 277 F.3d at 1276. (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)) "[C]laims of employment discrimination . . . present fact intensive issues. However, . . . motions for summary judgment or judgment as a matter of law are appropriate to 'police the baseline for hostile environment claims.'" *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999)(quoting *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 n.8 (5th Cir. 1999)).

In support of his hostile work environment claim, Hall testified: 1) he heard racial slurs including "nigger," "blackneck," and "monkey" used between three and twelve times; and 2) Sam Coleman greeted black employees using racial slurs. [Hall Dep., pp. 56-67]. Hall also testified that Coleman spit in his wheelbarrow and bragged

about it.  [Hall Dep., p. 43].  Hall said that he had not heard any Empire employee make any racist statement since December of 2000. [Hall Dep., p. 66].

The aforementioned conduct is not sufficiently severe or pervasive to alter the conditions of employment and create an abusive environment that a reasonable person would find hostile or abusive. *See Mendoza*, 195 F.3d 1247-53 (discussing sufficiency of sexually hostile work environment).  Hall was not subjected to frequent harassing comments. Hall heard three to twelve racial comments over an eighteen month period.  The comments Hall heard were likely offensive;  however,  these  comments  were  not  frequent. Furthermore, there is no evidence that any of the events described by Hall interfered with his job performance to any degree. *See e.g., Bivins v. Jeffers Vet Supply*, 873 F. Supp. 1500, 1508 (M.D. Ala. 1994)(granting summary judgment where the use of the word "nigger" although offensive did not "adversely affect a term or condition of employment").

These comments combined with the wheelbarrow incident do not show that Hall was subjected to a racially hostile work

environment. The wheelbarrow incident occurred on one occasion and was never foreshadowed or repeated. It was not frequent or pervasive. Furthermore, there is no indication that Hall subjectively perceived any threat or that it was so objectively severe and pervasive as to alter the terms and conditions of his employment.

Considering the record, a reasonable jury could not find Hall was subjected to an objectively hostile work environment at Empire. Thus, Hall has failed to demonstrate that there is a genuine issue for trial.

### 2.    Title VII Race Discrimination Claim

Hall alleges that he was passed over for the mudmixer position because of his race - African American.    "Whether an employer intentionally discriminated against an employee . . . is a question of fact, which may be proved either through direct or circumstantial evidence." *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002).    Direct evidence of discrimination is evidence that, "if believed, proves [the] existence of [a] fact in issue without inference or presumption." *Burrell v. Bd. Of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997).    Plaintiff presents no direct

evidence of discrimination.

Absent direct evidence of discriminatory intent, an employee may prove his cause through circumstantial evidence, using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this burden-shifting analysis, the plaintiff creates a rebuttable presumption of discrimination by proving a prima facie case of discrimination, which consists of proof that: "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas Corp.*, 411 U.S. 792 at 804). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield*, 115 F.3d at 1562 (citing *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308 (8th Cir. 1994)). The defendant can rebut the presumption of discrimination by producing evidence of a legitimate, non-discriminatory reason for the challenged employment action. *Holifield*, 115 F.3d 1564. Once the presumption is rebutted, the

employer is entitled to summary judgment unless the plaintiff proffers evidence sufficient to permit a reasonable factfinder to conclude that the reasons articulated by the defendant were mere pretext for discrimination. *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002).

Empire claims that Hall has failed to produce substantial evidence that he was qualified for the mudmixer position or that a similarly situated white employee was treated more favorably. "In employment discrimination cases, the question of whether the plaintiffs are similarly situated with non-minority members is crucial." *Marshall v. W. Grain Co., Inc.*, 838 F.2d 1165, 1168 (11th Cir. 1988)(citing *Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538 (7th Cir. 1987)). Furthermore, "[i]f Plaintiff fails to identify similarly situated, non-minority employees who were treated more favorably, [his] case must fail because the burden is on [him] to establish [his] prima facie case." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306 (11th Cir. 1998) *modified on non-relevant part of denial for reh'g* 151 F.3d 1321 (11th Cir. 1998).

The plaintiff offers Jeff Rominger as his comparator.  Rominger is a white employee. When the mudmixer position was awarded to Rominger he worked as a common laborer in Department 5. The defendant argues that Rominger is not similarly situated.

The procedure that Empire is required to follow in posting a job is set forth in the union contract.  The contract contains the following: "[a]ppointment to fill a permanent vacancy in a line of promotion . . . shall be made in the following order or priority:  (a) An employee who is working regular scheduled relief in his department shall be considered first for the promotion." [Contract p. 26].  Danny Lewis, the assistant plant manager, testified that Jeff Rominger, a white employee, received the mudmixer position because he was the most senior employee within Department 5 who sought the position.  [Lewis Dep., p. 36-37].

The mudmixer position is a second tier position in Department 5. Jeff Rominger was a Department 5 employee and sought the mudmixer position.  Hall was a Department 3 employee who sought the mudmixer position.   Therefore, Hall has not produced an employee that is similarly situated in all respects and that has been

treated more favorably because of his race.  Rominger was awarded the mudmixer position because he was the most senior employee in Department 5 who sought the position.  According to the contract, since Rominger was a Department 5 employee, he had priority over all other employees who were not in Department 5.  Empire based its decision on a neutral and non-discriminatory implementation of the CBA and the plaintiff has failed to demonstrate that this reason is a pretext for race discrimination.  Hall has failed to demonstrate that there is a genuine issue for trial.

### 3.   Title VII Retaliation Claim

#### a.   Facts

Hall claims that Empire retaliated against him for filing a union grievance and an Equal Employment Opportunity Charge.  The facts associated with this claim are as follows:

Hall filed an EEOC charge of racial discrimination on October 16, 2001.  On November 13, 2001, Hall was training David Cordial on the proper operation of a hot car.  Hall admitted that he got off the hot car to "throw the switch" and when he got off, Cordial engaged the motor causing the hot car to hit some equipment.  [Hall Depo., pp.

155-158].   For this safety violation, Empire gave Hall a written reprimand. Hall was warned that the next step in the discipline process was a second written reprimand.

Empire alleges that on February 27, 2002, Hall was six minutes late to work.  Hall testified that he did not believe he was late. [Hall Depo., p. 162].  Hall received a written reprimand.  He was warned that a future violation could result in further discipline that could include discharge.

On March 7, 2002, Hall received a warning for being late four times in the past six months and if he was late again he may be suspended three days without pay.  Hall testified that this was not a reprimand but a "letter letting [him] know where [he stood].  [Hall Depo., p. 168].

Empire alleges that on March 8, 2002, Hall failed to properly report off work. Hall testified that he did not properly report off work but told his foreman that the doctor gave him two days off work. [Hall Depo., pp. 170-171].  Hall received a written reprimand and was warned that a future violation could result in further discipline that could include discharge.

Empire alleges that on March 13, 2002, Hall failed to clean his oven.  Hall testified that, "I always clean my ovens up.  And I report that the last time this door was pushed, . . . in the hot car, it wasn't cleaned up.  Why should I have to go up and clean up two ovens, the one prior to that one and the one that I get?"  [Hall Depo., pp. 173-174].  Hall was given a second written reprimand and was warned that a future violation could result in further discipline that could include discharge.

Empire alleges that on March 20, 2002, Hall failed to properly report off work and missed a shift.  Hall testified that he told the foreman he was going to the doctor.  Hall brought the doctor's report to Mr. Lewis, but Mr. Lewis said the doctor's report was not properly filled out.  [Hall Depo., p. 172].  Neither the doctor's report nor Empire's policy on how to properly fill out a doctor's report was made available to the court.  For these rules violations, Hall was given a final warning and a three day disciplinary suspension. Hall was warned that a future violation could result in further discipline that could include discharge.

Empire alleges that on July 19, 2002, Hall failed to close and latch the gate. Hall admitted that Joe Junkin told him that it was always his responsibility to close and latch the gate even if he was working other tasks. [Hall Depo., pp. 176-177]. Hall received a three day suspension without pay for the violation. (Hall grieved this reprimand and has yet to serve the three day suspension.) Hall was warned that a future violation could result in further discipline that could include discharge.

On August 15, 2002, Hall received a reprimand because he was late on June 14, 2002, and August 15, 2002, and these violations counted together as chronic absenteeism. Hall testified that he was a minute late but someone wrote on the time card not late. [Hall Depo., pp. 178-179]. Hall was warned that a future violation could result in further discipline including a three day suspension.

Empire alleges that on November 6, 2002, Hall left work early for the bathhouse without permission. Hall testified that he had worked through lunch; therefore, he was allowed to leave early. [Hall Depo., p. 182]. However, the record is unclear if Hall told anyone that he worked through lunch. Hall was given a three day suspension

for this violation.  (Hall grieved this reprimand and has yet to serve the three day suspension.)

### b.    Legal Analysis

Because the plaintiff has presented no direct evidence of retaliatory intent, the plaintiff must establish his retaliation claim through circumstantial evidence using the burden shifting analysis for retaliation claims.   "In order to establish a prima facie case of retaliation, the plaintiff must show:  (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between his protected activity and the adverse employment action.  *Bass v. Bd. Of County Comm'rs*, 256 F.3d 1095, 1117 (11th Cir. 2001) (citations omitted).

"[W]hether an employee has suffered a materially adverse employment action will normally depend on the facts of each individual case." *Bass* 236 F.3d at 1118.  For an employment action to be adverse, "an employee must ultimately show some employment injury." *Merriweather v. Alabama Dept. of Public Safety*, 17 F. Supp. 2d 1260, 1274 (M.D. Ala. 1998).  Under Title VII, an employer's action that "alters an employee's compensation, terms, conditions, or

privileges of employment" constitutes an adverse action. *Bass* 236 F.3d at 1118.

The Eleventh Circuit reads the causation requirement very broadly: "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *EEOC v. Richhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). Once the plaintiff establishes a prima facie case of retaliation, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. *Meeks v. Computer Associates Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994). The burden then shifts back to the plaintiff to demonstrate that the employer's proffered explanation is actually a pretext for retaliation. *Id.*

Hall establishes the first element of his prima facie case by showing that he filed an EEOC charge on October 16, 2001, that Empire was aware of the EEOC charge, and that he suffered an adverse employment action. Without so holding, the court assumes that Hall can establish that the adverse employment action is not completely unrelated to the protected activity.

Empire has proffered legitimate and non-discriminatory reasons for the adverse employment actions:  1) Hall failed to properly report off work and did not have a doctor's excuse that was properly filled out; 2) Hall failed to properly close and latch the gate, which Hall admitted was his responsibility; and 3) Hall went to the bathhouse early, which Hall admits was a company violation.

Hall has produced no evidence to indicate that retaliation was the real reason he received these adverse employment actions.  Hall has failed to demonstrate that the reasons for the reprimands were pretextual as required by the burden-shifting framework in *Meeks*.  15 F.3d 1013 at 1021.  As such, Empire is entitled to summary judgment on this claim.

## V.   CONCLUSION

In sum, the court concludes the motion to strike is due to be denied, while the motion for summary judgment is due to be granted in all respects.   The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this _____ of December 2003.


L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE